**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **STEPHANIE HANNON,**<br><br>          **Plaintiff,**<br><br>          **v.**<br><br>**CITY OF PROSPECT HEIGHTS, an Illinois Municipal Corporation; JOE WADE, Individually; and SCOTT WILLIAMSON, Individually,**<br><br>          **Defendants.** | **Case No. 18 C 2475**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 35) is denied.

### I. BACKGROUND

This case concerns alleged gender-based employment discrimination and retaliation. Plaintiff Stephanie Hannon ("Hannon") is a resident of Lake County, Illinois. Defendant City of Prospect Heights ("the City") is an Illinois municipal corporation located in Cook County, Illinois. Defendant Scott Williamson ("Williamson") is a resident of Prospect Heights, and for all times relevant to this lawsuit, has served as an Alderman for the City. Defendant Joe Wade ("Wade") is a resident of Glenview, Illinois, and has served as the City Administrator for the City since 2015.

In December 2011, the City hired Hannon as its Finance Director, a part-time position. The City permitted Hannon to hold other part-time positions in other municipalities while working for the City; accordingly, beginning in 2014, Hannon also began working part-time as the Finance Director for the Village of Fox Lake, Illinois.

Hannon alleges that at some point in the course of her employment with the City, Williamson and Wade began to take steps to "freeze out" Hannon from her work in the City's government. Hannon alleges that the Defendants discriminated against her because of her gender in various ways, including: scheduling staff meetings at times they knew Hannon could not attend; not giving Hannon adequate notice of staff meetings; requiring Hannon to have her City Council presentations reviewed in advance by outside auditors; and generally holding Hannon to a different standard than her male counterparts. Additionally, Hannon alleges that Defendants retaliated against her for her whistleblowing activities (internal complaints about the City's contract attorney improperly inflating invoices) and her political affiliation (Hannon supported the City's Mayor, Nicholas Helmer, who was allegedly Williamson's rival).

Hannon charges that Defendants took a series of retaliatory and discriminatory adverse employment actions against her,

beginning in July 2016. Williamson and Wade apparently sought to reduce her pay while increasing her required hours in the office. Hannon alleges that Williamson and Wade told her that if she would not accept full time employment with the City, they would terminate her. On July 25, 2016, the City Council changed Hannon's job classification from part-time hourly to full-time salaried—a move Hannon alleges the City took to force her to give up her part-time work in Fox Lake. By May 2017, Defendants posted a job advertisement for Hannon's position. On June 5, 2017, Defendants terminated Hannon's employment.

Hannon brings eight counts: (1) gender discrimination in violation of the Equal Protection Clause and 42 U.S.C. § 1983, against all Defendants; (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964, against the City; (3) retaliation in violation of the Equal Protection Clause and 42 U.S.C. § 1983, against all Defendants; (4) retaliation in violation of Title VII of the Civil Rights Act of 1964, against the City; (5) retaliation in violation of the Illinois Human Rights Act, against the City; (6) political retaliation against constitutionally protected speech in violation of the First Amendment, against all Defendants; (7) violation of the Illinois Whistleblower's Act, against the City; and (8) common law retaliatory discharge, against the City.

Defendants now move under Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts II and V as untimely and Count VI as failing to state a claim. The Court will analyze each count in turn.

## II. LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of a complaint to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim has facial plausibility when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Threadbare recitals of the elements of a cause of action, or "mere conclusory statements," do not suffice to state a claim. *Id*.

## III. DISCUSSION

### A. Count II: Title VII Gender Discrimination

Count II asserts that the City discriminated against Hannon on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964. Title VII forbids employment discrimination

based on "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Defendants assert that Count II should be dismissed because Hannon failed to bring this claim within 90 days of receipt of the Right to Sue letter from the U.S. Department of Justice ("DOJ").

The following timeline is relevant to Hannon's Title VII gender discrimination claim: In January 2017, she filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). (*See* Charge of Discrimination, Ex. A to Compl., Dkt. No. 1-1.) Hannon alleges that an entire year passed and neither agency investigated her Charge, nor interviewed her. Accordingly, on January 3, 2018, Hannon requested a Right to Sue letter from the EEOC. (Request Letter, Ex. B to Sec. Am. Compl., Dkt. No. 33-2.) She again requested a Right to Sue letter from the EEOC on January 30, 2018. (Second Request Letter, Ex. C to Sec. Am. Compl., Dkt. No. 33-3.) She made this request for a third time on April 5, 2018. (Third Request Letter, Ex. D to Sec. Am. Compl., Dkt. No. 33-4.) At some point after April 5, 2018, the EEOC informed Hannon that it was not issuing a Right to Sue letter, but was instead forwarding her case to the DOJ.

Hannon initiated the instant litigation before receiving a Right to Sue letter. She has filed three Complaints in this case.

The first, filed on April 6, 2018, contained her Title VII gender discrimination claim against the City (Count II in the Second Amended Complaint). Then, on April 23, 2018, the DOJ issued a Right to Sue letter. (Ex. E to Sec. Am. Compl. Dkt. No. 33-5.) On November 12, 2018, Hannon filed her First Amended Complaint, in which she added her retaliation claims, and attached the Right to Sue letter. (*See* Ex. C to First Am. Compl., Dkt. No. 26-3.) Defendants filed their first responsive pleading on November 27, 2018. Finally, on January 15, 2019, Hannon filed her Second Amended Complaint. (Sec. Am. Compl., Dkt. No. 33.)

Defendants assert that a plaintiff's receipt of a Right to Sue letter is a prerequisite for the filing of a Title VII action, and that Count II must therefore be dismissed with prejudice. The Seventh Circuit has set forth the statutory requirements as to what claimants must do before they sue under Title VII: "(1) fil[e] a charge with the Equal Employment Opportunity Commission within . . . 300 days in states like Illinois . . . in which event the complainant must file his complaint with that agency at least 60 days before filing with the EEOC, and (2) wait[] to sue until receiving notification (the "right to sue" letter) from the Commission that the Commission does not intend to sue. The Commission must issue the letter within 180 days after receiving

the charge." *Doe v. Oberweis Dairy,* 456 F.3d 704, 708 (7th Cir. 2006) (citations omitted).

In this case, Hannon's Title VII claim survives despite the fact that she filed it before receiving her Right to Sue letter. The Seventh Circuit has held that receiving a Right to Sue letter after a complaint is filed and before a motion to dismiss is filed "effectively cures" the deficiency:

> [Plaintiff] did not have a right-to-sue letter when she filed her complaint. . . . While [plaintiff's Title VII claims] may have been subject to dismissal at any time prior to [plaintiff's] receipt of a right-to-sue letter, the receipt of that letter after the complaint had been filed, but before it had been dismissed, effectively cured the deficiency in the original complaint.

*Perkins v. Silverstein*, 939 F.2d 463, 470-71 (7th Cir. 1991); *see also Worth v. Tyer*, 276 F.3d 249, 259 (7th Cir. 2001) ("[A] complaint may be deficient and subject to dismissal if the plaintiff lacks a right-to-sue letter. However, the plaintiff's receipt of a right-to-sue letter before dismissal cured any deficiency in the original complaint.") Here, it was Defendants' duty to bring this deficiency in Hannon's Complaint to the Court's attention, and they failed to do so in a timely manner. *See id.* Therefore, Defendants' argument fails because it was not raised before Hannon received her Right to Sue letter. Defendants' Motion to Dismiss Count II is denied.

### B. Count V: IHRA Retaliation

Count V asserts that the City retaliated against Hannon in violation of the Illinois Human Rights Act ("IHRA"). Defendants argue that Count V should be dismissed because Hannon failed to file a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") within 180 days of the allegedly discriminatory conduct, as the IHRA required at the time this conduct took place. *See* 775 ILCS 5/7A-102(A)(1) (2017).

Hannon first filed a Charge of Discrimination with the IDHR on January 19, 2017 ("First Charge"). (*See* First Charge, Ex. A to Compl., Dkt. No. 1-1.) In the First Charge, Hannon detailed how the City had changed her job classification, and imposed unequal terms and conditions of employment, due to her sex. Hannon then filed a second Charge of Discrimination on November 29, 2017. (*See* Second Charge, Ex. F to Sec. Am. Compl., Dkt. No. 33-6.) In the Second Charge, Hannon added allegations of retaliation on the basis of sex, including details of her termination. On January 3, 2018, Hannon withdrew her First Charge from the IDHR. On October 14, 2018, Hannon received a Notice of Dismissal from IDHR on her Second Charge. (IDHR Notice of Dismissal, Ex. H to Sec. Am. Compl. Dkt. No. 33-8.)

The Court first must determine the date upon which Hannon's 180 days began to run. Because the charge-filing time limitation

is jurisdictional, *Faulkner-King v. Department of Human Rights*, 587 N.E.2d 599, 604 (Ill. App. Ct. 1992), the Court may not hear her IHRA claim if she did not comply with that limitation. The Seventh Circuit has held, in the context of EEOC Charges, that the statute of limitations to file a charge begins to accrue on the date "on which the plaintiff discovers that he has been injured." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). Similarly, Illinois courts have held that a claim begins to run on the date that the plaintiff "should have been aware" of the discriminatory conduct. *See Faulkner-King*, 587 N.E.2d at 603.

Hannon's termination took effect on June 5, 2017, within 180 days of when she filed her Second Charge alleging retaliation. However, Defendants argue that Hannon *learned* of her termination on May 31, 2017, over 180 days from when she filed her Second Charge, rendering it untimely. Defendants' factual assertion that Hannon learned of her termination on May 31 is inconsistent with the well-plead factual allegations in Hannon's Second Amended Complaint. The Court will not accept the facts alleged in Defendants' Motion to Dismiss over Hannon's well-pleaded facts at this stage. Because Hannon filed her Charge of Retaliation within 180 days of her termination, and the Court does not know when or if she became aware of her termination before she was actually

fired, the Court will consider the Second Charge timely for present purposes.

Moreover, Seventh Circuit precedent suggests that Hannon's Second Charge was not necessary. The Seventh Circuit has held in the context of federal claims that, "for practical reasons, to avoid futile procedural technicalities and endless loops of charge/retaliation/charge/retaliation, etc. . . . a plaintiff who alleges retaliation for having filed a charge with the EEOC need not file a second EEOC charge to sue for that retaliation." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1030 (7th Cir. 2013). The Northern District of Illinois has applied this reasoning to the IDHR context:

> The question is whether [the principle articulated in *Luevano*] also applies to administrative exhaustion of IHRA claims. . . . [T]he Court does not see any reason why the Seventh Circuit's logic rejecting the need for a second EEOC charge should not also apply to reject the need for a second IDHR charge to administratively exhaust an IHRA retaliation claim based on the filing of a previous IHRA discrimination claim. The IHRA's administrative exhaustion provision does not appear to be any more stringent than Title VII's analogous provision. Neither has the Court found any provision in the IHRA contrary to the Seventh Circuit's logic that the notice provided by the initial discrimination charge is sufficient to put an employer on notice of a potential retaliation charge for firing the employee after she files a discrimination charge.

*Thompson v. N. Tr. Co.*, No. 18 C 1140, 2018 WL 5024971, at *2 (N.D. Ill. Oct. 17, 2018). The Court finds this analysis persuasive, and

applicable to this case. Here, Hannon filed her Second Charge (alleging retaliation) ten months after filing her First Charge (alleging discrimination). Though Hannon ultimately withdrew her First Charge and therefore did not administratively exhaust that charge, she withdrew it months after filing her Second Charge. Thus, the initial discrimination charge sufficiently put the City on notice of a potential retaliation charge for firing Hannon. *See Thompson*, 2018 WL 5024971 at \*2. Accordingly, the Court denies Defendants' Motion to Dismiss Count V.

### C. Count VI: First Amendment Retaliation

Count VI asserts that all Defendants retaliated against Hannon's constitutionally protected speech in violation of the First Amendment. According to Hannon, the City, Williamson, and Wade, retaliated against her and ultimately terminated her because she politically supported the City's Mayor, who was allegedly Williamson's political adversary at the time.

The First Amendment generally prohibits government officials from dismissing or demoting an employee because of the employee's engagement in constitutionally protected political activity. *Heffernan v. City of Paterson, N.J.*, 136 S. Ct. 1412, 1416 (2016). To state a First Amendment retaliation claim, Hannon must allege that: "(1) she engaged in activity protected by the First Amendment; (2) she suffered a deprivation that would likely deter

First Amendment activity; and (3) the protected activity she engaged in was at least a motivating factor for the retaliatory action." *Archer v. Chisholm*, 870 F.3d 603, 618–19 (7th Cir. 2017) (citations omitted). Defendants assert that the first element—whether Hannon engaged in protected speech—is not met here because the speech in question was pursuant to her official duties as a public employee. When public employees make statements "pursuant to their official duties," the employees are "not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Defendants argue that the speech in question consisted of Hannon's whistleblowing about allegedly improper attorney invoices, and that this speech was made pursuant to her official duties as the City's Finance Director. However, Defendants' arguments are premised on the incorrect assumption that Hannon's First Amendment claim is based on her whistleblowing activities. Hannon's whistleblowing about overbilling is the basis of Count VII, alleging a violation of the Illinois Whistleblower's Act. The Second Amended Complaint clearly states that Count VI concerns retaliation due to Hannon's support of Mayor Helmer. (*See* Sec. Am. Compl. ¶¶ 185-203.) Despite Defendants' misunderstanding, the Court will assess whether Hannon's support of Mayor Helmer constitutes protected speech.

In her Second Amended Complaint, Hannon contends that the following speech is constitutionally protected: "Plaintiff supported Mayor Helmer's 2015 election bid and conferred with Helmer and Prospect Heights citizens outside of work regarding Helmer's politics and campaign. Plaintiff attended Mayor Helmer's campaign rally and election party." (Sec. Am. Compl. ¶¶ 189-90.) In *Garcetti*, the Supreme Court held that First Amendment protection for a public employee's speech turns on two inquiries: (1) whether the employee spoke as a citizen on a matter of public concern; and (2) if so, whether the governmental entity has offered an adequate justification for its decision to treat the employee differently from the general public. *Garcetti*, 547 U.S. at 418. Associating with a political campaign is speech on a matter of public concern. *See Heffernan*, 136 S. Ct. at 1418-19. And the City did not offer a justification for treating Hannon differently from the general public, as Hannon alleges it did. Therefore, Defendants' argument that Hannon's speech was not on a matter of public concern fails.

In their Reply Brief, Defendants present a new reason to dismiss Count VI: that Hannon did not adequately plead an unconstitutional municipal policy to support § 1983 liability. *See Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 494 (7th Cir. 2002). By raising this argument only in reply, Defendants deprived Hannon

of the opportunity to respond. For this reason, the argument is waived. *See Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012); *see also Gagnon v. JPMorgan Chase Bank, N.A.*, 563 B.R. 835, 846 n.3 (N.D. Ill. 2017). Accordingly, Defendants' Motion to Dismiss Count VI is denied.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendants' Motion to Dismiss (Dkt. No. 35) is denied.

**IT IS SO ORDERED.**

                                    Harry D. Leinenweber, Judge
                                    United States District Court

Dated: 7/2/2019